**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| DARCY D. FULLER, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 4:09-CV-96-CDL-GMF |
| : | 42 U.S.C. § 1983 |
| SHERIFF JOHN DARR and : | |
| DEPUTY CURTIS MERRITT, : | |
| : | |
| Defendants. : | |

**ORDER AND**
**REPORT AND RECOMMENDATION**

Before the court is the Pre-Answer Motion to Dismiss filed by Defendants Sheriff John Darr and Deputy Curtis Merritt, (Doc. 15), as well as motions to appoint counsel and to proceed *in forma pauperis* filed by Plaintiff, (Docs. 21 & 22). Plaintiff was notified of his right to respond to Defendants' Motion on November 9, 2009, (Doc. 16), and timely responded, (Doc. 18).

**LEGAL STANDARDS FOR MOTION TO DISMISS**

The standard for a motion to dismiss was altered by the United States Supreme Court case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which overturned the fifty year old test of "no set of facts" established in *Conley v. Gibson*, 355 U.S. 41 (1957). The Court of Appeals for the Eleventh Circuit addressed the new standard in *Financial Security Assurance, Inc. v. Stephens, Inc.*, stating:

> In order for the plaintiff to satisfy his "obligation to provide the grounds of his entitlement to relief," he must allege more than "labels and conclusions"; his complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (May 21, 2007) (citations and quotations omitted). Stated differently, the factual allegations in a complaint must "possess

> enough heft" to set forth "a plausible entitlement to relief," 127 S. Ct.
> at 1966-67. Moreover, "while notice pleading may not require that
> the pleader allege a 'specific fact' to cover every element or allege
> 'with precision' each element of a claim, it is still necessary that a
> complaint 'contain either direct or inferential allegations respecting all
> the material elements necessary to sustain a recovery under some
> viable legal theory.'" *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253
> F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust
> Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam). In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam). The court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Nevertheless, if a complaint does not include sufficient factual allegations "'to raise a right of relief above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims, then the complaint must be dismissed. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 556). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## FACTUAL BACKGROUND

On August 12, 2009, Plaintiff, a pre-trial detainee in the Muscogee County Detention Center, filed the above-styled civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). On October 6, 2009, Plaintiff sought to amend his Complaint. The court permitted this amendment as a matter of right pursuant to Federal Rule of Civil Procedure 15(a). (Doc. 14).

Plaintiff's Complaint and the amendments thereto primarily allege civil rights violations related

2

to the conditions of the suicide watch cells at the jail.  First, Plaintiff complains of the unsanitary conditions of such cells.  Plaintiff contends that he was forced to sleep on the floor of the cell without adequate protection from the unsanitary surface, and as a result, he contracted a bacterial infection. (Doc. 1 at 4).  Plaintiff also contends that three to four suicidal inmates are often confined to one eight-foot by eleven-foot cell.  *Id.*

Plaintiff also alleges that on January 15, 2009, he became enraged with the condition of the cells and his treatment by prison officials, and he attempted to hang himself from a sprinkler head in the suicide cell to which he was assigned.  (Doc. 1 at 4).  As a result of this attempt, Plaintiff broke the sprinkler head and was charged by Defendant Curtis Merritt, a jail deputy, with felony interference with government property.  *Id.*  Plaintiff alleges that Defendant Merritt should not have pursued these charges, apparently because Plaintiff "was temporar[il]y insane when this incident took place."  *Id.* Finally, Plaintiff alleges that while he was housed in the suicide prevention cell, he was denied access to a telephone, preventing him from calling his attorney.  (Doc. 13 at 4).

Plaintiff seeks to hold Defendant Merritt and Muscogee County Sheriff, Defendant John Darr, liable under federal and state law for his treatment in the prison.  Plaintiff pleads for relief for himself and his family in the form of money damages for pain and suffering and for judicial relief from "the pending charge."[1]  (Doc. 1 at 5).  For the following reasons, it is recommended that Plaintiff's Complaint be dismissed in its entirety.

## DISCUSSION

---

[1] Plaintiff's claim for money damages for the pain and suffering of his family fails for lack of standing.  *See, e.g., Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005) (holding that to have standing, "the plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief") (internal quotation marks omitted) (emphasis added).

3

**I.     Federal Law Claims**

*A.     Claims Against Defendant Darr*

Plaintiff contends that Defendant Darr is liable for federal civil rights violations based upon the alleged policies and/or customs of the jail (1) requiring prisoners to sleep on the floor in overcrowded one-man cells with no mattress or blanket, and at times without clothing; (2) placing Plaintiff in a suicide cell that contained protruding fixtures from which inmates could purposefully injure themselves, thus rendering such cells unsafe for suicidal inmates; and (3) failing to train jailers and deputies in proper sanitation methods for the prison cell, resulting in Plaintiff contracting a bacterial infection. In addition, Plaintiff contends that Defendant Darr is liable for denying Plaintiff access to a telephone to contact his attorney from November 26, 2008 until February 12, 2009. (Doc. 13 at 1-4). Each of these claims is subject to dismissal.

1.     Conditions of Confinement

Plaintiff's claims regarding the conditions of his confinement are due to be dismissed because Plaintiff failed to exhaust the prison's grievance procedure. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, the United States Supreme Court has held that an inmate must fully and properly exhaust all available administrative remedies before he can file a Section 1983 lawsuit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

In *Bryant v. Rich*, the Eleventh Circuit addressed the proper form of a pretrial motion challenging a plaintiff's failure to exhaust his administrative remedies, holding:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Shortly after its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the court held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam). It is thus clear that a judge may resolve factual questions when deciding a motion to dismiss for failure to exhaust nonjudicial remedies, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376.

Defendants contend that Plaintiff failed to exhaust the prison's grievance procedure with

respect to his conditions of confinement claims. In support of this contention, Defendants provide the affidavit of Commander Dane Collins, the Commander and Warden of the Muscogee County Jail. Commander Collins explains that upon entering the Muscogee County Jail, each inmate is given a copy of the Muscogee County Jail Inmate Handbook, which contains the grievance procedure. (Collins Aff. ¶¶ 3-5, Nov. 6, 2009). The grievance procedure, including the appeal, is completed on one form. (*Id.* ¶ 6) Once an inmate files a written grievance form, a Grievance Officer responds directly below the inmate's narrative. (*Id*. ¶ 7). The form is returned to the inmate, who may circle "yes" beside the word "appeal" to indicate a desire to appeal the Grievance Officer's response. (*Id*. ¶ 8). If the inmate indicates that he wishes to appeal, the form is taken to the Jail Administrator, who responds to the inmate's grievance on the same form. (*Id.* ¶ 9). An appeal to the Administrator fully exhausts the grievance system offered at Muscogee County Jail. (*Id.* ¶ 11).

Commander Collins serves as the Jail Administrator. (Collins Aff. ¶ 12). After reviewing Plaintiff's entire grievance file, Collins states that Plaintiff filed nine grievances, five of which were appealed. (*Id.* ¶¶ 14, 16). Of these five appealed grievances, three grievances complained of the food Plaintiff was served; one concerned phone calls to his attorney; and one complained that his allergy medicine was making him sick. (*Id*. ¶ 16). Commander Collins avers that "Plaintiff never filed an initial grievance concerning any condition of a suicide prevention cell or treatment he received by security personnel or medical personnel while in a prevention cell." (*Id.* ¶ 15).

Under *Burnside*, the court must first take Plaintiff's factual assertions as true and determine whether Defendants are entitled to dismissal on grounds that Plaintiff failed to exhaust his administrative remedies. *Burnside*, 541 F.3d at 1082. Plaintiff acknowledges that he failed to grieve his conditions of confinement complaints. (*See* Doc. 1 at 2). In his Complaint, Plaintiff argues that

6

this failure was because "disciplinary actions are not to be reviewed under the grievance system." *Id.* In his response to Defendants' motion to dismiss, Plaintiff further argues that "when a[n] inmate is place[d] on suicide watch, he is not allowed to have any writing material in his or her posses[s]ion, therefore they are not allowed inmate grievances to seek relief," and "an inmate on suicide watch can not force an officer to file a grievance on his behalf." (Doc. 18 at 1-2).[2]

Even taking these assertions as true, Plaintiff has not demonstrated that he properly exhausted his administrative remedies. While it is true, as Plaintiff asserts, that inmates who are on suicide watch are not permitted to have writing materials, it is undisputed that under the jail's grievance policy, an inmate who is unable to complete a grievance form may request help in completing the form from either another inmate or a corrections officer. (*See* Ex. A to Doc. 15 at 6 ¶ I). Plaintiff does not contend that he was unaware of this policy. Likewise, even if it is true that "an inmate on suicide watch can not force an officer to file a grievance on his behalf," (Doc. 18 at 1-2), this allegation does not establish that Plaintiff was unable to grieve his complaints even after he sought assistance from jail officers and fellow inmates. In fact, it is clear from documents attached to Defendants' motion to dismiss that Plaintiff enlisted the aid of prison officials and fully grieved two

---

[2]In addition, Plaintiff contends that because he raises constitutional claims, "the court may not, as a matter of federal common law, apply an extrastatutory waiver requirement against him." (Doc. 18 at 2). The *Woodford* Court specifically addressed this contention (which, incidentally, was made in the dissenting opinion in that case) and held that requiring proper exhaustion of constitutional claims was mandated by the PLRA's exhaustion provision. *See Woodford*, 548 U.S. at 91 n.2 ("As for the suggestion that the PLRA might be meant to require proper exhaustion of nonconstitutional claims but not constitutional claims, we fail to see how such a carve-out would serve Congress' purpose of addressing a flood of prisoner litigation in the federal courts when the overwhelming majority of prisoner civil rights and prison condition suits are based on the Constitution." (internal citation omitted)). Plaintiff's understanding of the law is simply incorrect.

of his complaints while he was housed in the suicide cell.  (*See* Ex. A to Doc. 15 at 11-12).[3]

Moreover, Plaintiff does not allege that he was subjected to disciplinary actions that could not be reviewed under the grievance policy.  Thus, even taking Plaintiff's allegations as true, Plaintiff has failed to exhaust the prison's grievance procedure with respect to his conditions of confinement claims.  Because this issue can be resolved at the first level of *Burnside* review, there is no need to proceed to the second step.  Plaintiff's failure to exhaust the administrative remedies available to him precludes the court from reviewing his conditions of confinement claims against Defendant Darr.

          2.     Denial of Telephone Access

Plaintiff next alleges that Defendant Darr's "enforcement of jail policys [sic], regulations, practice, custom and procedures denied Plaintiff access to use the telephone to contact attorney" while he was housed in the suicide prevention cell from November 26, 2008 until February 12, 2009. (Doc. 13 at 4; *see also* Doc. 18 at 3).  There is no free-standing constitutional right for a prisoner to use the telephone while incarcerated.  Instead, a prisoner challenging his access to the telephone must link the denial of phone privileges to some already-established constitutional right.  Because Plaintiff alleges that he was denied access to a telephone to contact his attorney, it appears that he is claiming

---

[3] Plaintiff did not assert in his original Complaint, his Amended Complaint, or his response to Defendants' motion to dismiss, that he was somehow prevented by prison officials from grieving his complaints. However, in an unauthorized document filed after Defendants' reply, Plaintiff alleges that he asked an officer to file a grievance related to the sanitary conditions of the suicide cells, and the officer refused to do so. (Doc. 20 at 2-3). As discussed in section IV below, it is recommended that the Court not consider these allegations as they were effectively made in an unauthorized sur-reply brief. Even taking these allegations as true, however, Plaintiff never contends that he asked more than one prison official or another inmate to assist him in filing a grievance, and it is clear from the documents attached to Defendants' motion to dismiss that at least one jail official cooperated with Plaintiff by filing grievances on Plaintiff's behalf.

that he was denied his constitutional right of access to the courts.[4]

The United States Supreme Court has recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (internal quotation marks omitted). A prisoner must therefore be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (internal quotation marks omitted). In order to demonstrate a violation of the constitutional right of access to the courts, an inmate must demonstrate that the alleged shortcoming in the prison's facilities or policies "hindered his efforts to pursue a legal claim." *Id.* In other words, the prisoner must show an actual injury. *See id.* This type of injury can take several forms; for example, the prisoner might show

> that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

---

[4]In his response to Defendants' motion to dismiss, Plaintiff contends that he "is not presenting a claim for denial of access to the court" but rather he "is presenting a claim for denial of access to use the telephone from Nov. 26, 2008 until Feb. 12, 2009." (Doc. 18 at 3-4). While it is true that courts have recognized an inmate's "First Amendment right to communicate with family and friends[,]" *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996), Plaintiff does not allege that he ever attempted to exercise this right. Instead, the only person Plaintiff apparently wished to contact was his attorney. (*See, e.g.,* Doc. 13 at 4; Doc. 18 at 3).

Additionally, while Plaintiff correctly states that a pre-trial detainee must not be punished prior to conviction, Plaintiff has not alleged that the denial of telephone privileges was a form of punishment or was not justified by any legitimate governmental objectives so as to state a claim for a Fourteenth Amendment violation. *See Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (holding that "[t]he determination of whether a condition of pretrial detention amounts to punishment" so as to amount to a Fourteenth Amendment violation "turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose").

9

*Id.* Requiring that a prisoner allege an actual injury prevents courts from involving themselves in the minutiae of prison administration while preserving the ability of the court to remedy any inadequacies that actually produce a cognizable injury. *See id.* at 357. At this stage in the litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 358 (internal quotation marks omitted).

In this case, Plaintiff has failed to allege any injury caused by the prison's alleged policy of denying telephone privileges to him while he was on suicide watch. Because Plaintiff has not made even general factual allegations of injury resulting from Defendant Darr's conduct, he has not established that he has standing to pursue his charge that Defendant's denial of telephone privileges resulted in a less-than-adequate opportunity to present his claims before a court. *See Lewis*, 518 U.S. at 349. Defendant is therefore entitled to dismissal of this claim.

### B. *Claims Against Defendant Merritt*

Plaintiff also contends that Defendant Merritt is liable under federal law for placing Plaintiff in an allegedly unsafe suicide cell and for charging Plaintiff with interfering with government property when Plaintiff broke the sprinkler head during his unsuccessful suicide attempt. As with Plaintiff's claims against Defendant Darr, the claims against Defendant Merritt are subject to dismissal.

#### 1. Suicide Cell Placement

Plaintiff first alleges that Defendant Merritt is liable for Plaintiff's placement in an unsafe suicide cell. (Doc. 13 at 5). As discussed in section I.A.1. *supra*, Plaintiff has failed to exhaust his administrative remedies regarding the safety conditions of the suicide prevention cells or his placement therein. (Collins Aff. ¶ 15 ("Plaintiff never filed an initial grievance concerning any

10

condition of a suicide prevention cell or treatment he received by security personnel or medical personnel while in a prevention cell.")).  Because the PLRA renders exhaustion of administrative remedies a precondition to suit, *see* 42 U.S.C. § 1997e(a), Plaintiff's claims against Defendant Merritt regarding the conditions of the suicide prevention cells are subject to dismissal.

### 2. Pursuit of Felony Charge

Plaintiff also seeks to hold Defendant Merritt liable for charging Plaintiff with felony destruction of government property when Plaintiff damaged the sprinkler head from which he tried to hang himself.  Plaintiff contends that Defendant Merritt should not have pursued this charge because Plaintiff was insane, and he seeks judicial relief from the pending charge.  Plaintiff's contentions cannot state a § 1983 claim.  Plaintiff admits to the criminal conduct that forms the basis of the pending charge.  *See* O.C.G.A. § 16-7-24(a) ("A person commits the offense of interference with government property when he destroys, damages, or defaces government property . . . ."); *see also Taylor v. State*, 267 Ga. App. 588, 589, 600 S.E.2d 675, 676-77 (2004) (finding sufficient evidence to convict prisoner of interference with government property when prisoner admitted that the crack in the window to his cell was the result of his hitting the window).  Plaintiff simply raises a defense to his criminal liability.  Under these circumstances, Plaintiff has failed to allege the violation of one of his constitutional rights as required by 42 U.S.C. § 1983.

## II.   State Law Claims

Plaintiff also brings claims against both Defendants for violations of Georgia law.  (*See, e.g.,* Doc. 13 at 1 ("The Plaintiff seeks to hold John Darr . . . liable in his official capacities in violation of O.C.G.A. 15-16-24(3)."; *see also* Doc. 13 at 5)).  District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

District courts have supplemental jurisdiction over all other claims, including state law claims, "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a) ] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

As discussed above, each of Plaintiff's federal law claims in this case is without merit. Because "[b]oth comity and economy are served when issues of state law are resolved by state courts," it is recommended that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss those claims without prejudice. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir.2002) ("The argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial.").

### III.     Other Outstanding Motions

Plaintiff has filed a document he styles as "Plaintiff Motion to Strike Defendant Motion to Dismiss file on November 24, 2008." (Doc. 20). In this document, Plaintiff seeks to add a new claim against entirely new defendants for assault and appears to assert a claim for injunctive relief regarding his right of access to the telephone. (Doc. 20 at 1-2, 5). Additionally, Plaintiff contends for the first time that he attempted to exhaust the grievance procedure for his complaints regarding the unsanitary condition of the suicide cells, and he continues to elaborate on the merits of his claims in response

to Defendants' motion to dismiss. (Doc. 20 at 2, 6).[5]

"Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Castro v. United States*, 540 U.S. 375, 381 (2003). "They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Id.* (internal citations omitted). Looking past the title of the motion to its contents, it is clear that substantively, Plaintiff is attempting to respond to Defendant's reply brief, seeking to amend his Amended Complaint, and/or seeking to join new parties to this lawsuit. Accordingly, Plaintiff's motion could either be construed as a sur-reply brief, a motion to amend, and/or a motion for joinder of parties. Any way this document is construed, however, consideration of it is not necessary.[6]

To the extent Plaintiff's "Motion to Strike" could be construed as a sur-reply, it was not authorized by the court. The Local Rules of this court provide that "[b]riefing of any motion or issue concludes when the movant files a reply brief." Local R. 7.3.1(a). Because the court disfavors sur-reply briefs, Local R. 7.3.1(b), any "party desiring to file a sur-reply brief must move in writing for

---

[5]Plaintiff states that he

> ask[ed] Deputy Wilson to fill out a grievance form on his behalf, for unsanitary living conditions and for not being able to use the telephone. The grievance was never filed with the grievance officer nor the warden or designee as required in the inmate handbook. The Plaintiff have eye witness that was there when Plaintiff talk to the officers and ask them to fill out the grievances, and they will testify to the fact that this statement is true. The Plaintiff also have witness that will testify to the fact that they have been subject to similar type of treatment.

(Doc. 20 at 2-3).

[6]This document was entered onto the docket as an "Amended Response," and as such, it does not require action by the court.

13

permission to do so within seven (7) business days of the filing of the brief to which reply is desired, succinctly specifying the reasons why additional briefing is necessary." Local R. 7.3.1(c). In addition, any "proposed sur-reply brief shall not accompany the motion." *Id.* Because Plaintiff failed to comply with the court's local rules regarding sur-reply briefs, the court need not consider Plaintiff's "Motion to Strike."

Likewise, if the document is construed as a motion to amend, the court would not be required to grant Plaintiff the motion. Although leave to amend is to be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), a court need not grant leave to amend if amendment would be futile, *see, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). Permitting Plaintiff to amend his Complaint to assert a claim for injunctive relief on his denial of telephone privileges would be futile. Plaintiff has failed to allege that Defendants' telephone policy caused him any actual injury, and he also failed to indicate a future circumstance where he might be subject to confinement within the suicide prevention cell and denied telephone access. "Thus, his request for injunctive relief did not rise above the speculative level, and he lacked standing to pursue the requested relief." *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 n.5 (11th Cir. 2009); *see also Holt v. Crist*, 233 F. App'x 900, 903 (11th Cir. 2007) (per curiam) (finding district court did not err in dismissing plaintiff's claims for declaratory and injunctive relief when plaintiff's "factual allegations related to past conduct, he made no allegation of a continuing injury, and the possibility that he will be subject to criminal prosecution in the future is insufficient to state a claim for declaratory relief"). Accordingly, to the extent Plaintiff's "Motion to Strike" can be construed as a motion to amend the Complaint, such motion could be denied.

Finally, permitting Plaintiff to amend his Complaint to assert an entirely new assault claim

against defendants not named in either the original Complaint or the Amended Complaint would be improper under Federal Rule of Civil Procedure 20. The Federal Rules of Civil Procedure permit a party to join defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The decision to permit joinder of additional parties is left to the sound discretion of the district court. *Hyland v. Sec'y for Dep't of Corr.*, No. 06-14455, 2007 WL 2445972, at *4 (11th Cir. Aug. 29, 2007) (per curiam). In this case, Plaintiff seeks to assert a claim against jail deputies Tabot, Carter, and Williams for assaulting him while he was housed in the suicide cell. (Doc. 20 at 2). This claim cannot fairly be said to have arisen from the same events that gave rise to the presently-pending lawsuit; nor can it be said that there would be questions of fact or law that are common to all the defendants Plaintiff names.[7] Accordingly, to the extent Plaintiff seeks to join additional parties to this case, such joinder would be improper under Federal Rule of Civil Procedure 20, and any motion seeking such joinder could be denied.

Plaintiff has also filed a Motion to Appoint Counsel (Doc. 21) and a Motion for Leave to Proceed *In Forma Pauperis* (Doc. 22). As the court has already granted Plaintiff leave to proceed *in forma pauperis*, (*see* Doc. 4), Plaintiff's Motion requesting the same is denied as moot.

With respect to Plaintiff's request for appointed counsel, the court observes that generally,

---

[7] Furthermore, it appears from the record that Plaintiff has failed to exhaust his administrative remedies with respect to his claims against Deputies Tabot, Carter, and Williams. (*See* Collins Aff. ¶ 15 "Plaintiff never filed an initial grievance concerning any condition of a suicide prevention cell or treatment he received by security personnel or medical personnel while in a prevention cell.")). The Eleventh Circuit has observed that it is not an abuse of discretion for a court to refuse to join a party when subsequent dismissal of that party would be appropriate. *Hyland*, 2007 WL 2445972, at *4.

no right to counsel exists in § 1983 actions. *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985) (per curiam); *Mekdeci v. Merrell Nat'l Lab.*, 711 F.2d 1510, 1522 n.19 (11th Cir.1983); *Hardwick v. Ault,* 517 F.2d 295, 298 (5th Cir. 1975). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982) (per curiam). After having fully considered Plaintiff's motion and considering, among other factors, the merits of the Plaintiff's claim and the complexity of the issues presented, it does not appear that appointed counsel is required in this action. *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc). Accordingly, Plaintiff's Motion to Appoint Counsel is likewise denied.

WHEREFORE, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint be DISMISSED in its entirety. Under 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within FOURTEEN (14) DAYS after being served with a copy hereof.

SO RECOMMENDED this 22nd day of January, 2010.

S/G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mkw